# United States Court of Appeals for the Federal Circuit

————————

**ALAN C. DIXON,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

————————

2022-1564

————————

Appeal from the United States Court of Federal Claims in No. 1:20-cv-01258-DAT, Judge David A. Tapp.

————————

Decided: May 10, 2023

————————

TIFFANY MICHELLE HUNT, Hunt Tax Law, PLLC, Dallas, TX, argued for plaintiff-appellant.

ISAAC B. ROSENBERG, Tax Division, Appellate Section, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by BRUCE R. ELLISEN, DAVID A. HUBBERT.

KEITH FOGG, Federal Tax Clinic at Legal Services Center, Harvard Law School, Jamaica Plain, MA, for amicus curiae The Center for Taxpayer Rights. Also represented by ANDREW WEINER, Beasley School of Law, Temple University, Philadelphia, PA.

_____

Before TARANTO, CLEVENGER, and HUGHES, *Circuit Judges*.

TARANTO, *Circuit Judge*.

Alan C. Dixon seeks a refund of taxes he paid to the Internal Revenue Service (IRS). In 2017, his tax preparer filed amended tax returns for him, within the time permitted by law, claiming a refund of amounts paid for tax years 2013 and 2014, but, after an audit, the IRS denied the refund claims and instead assessed additional taxes. Mr. Dixon then filed an action in the U.S. Court of Federal Claims (Claims Court), and during that litigation, it became clear that Mr. Dixon had not personally written the signatures of his name on the 2017 amended returns—the tax preparer had signed Mr. Dixon's name—and no authorizing power-of-attorney documentation accompanied the amended returns. Because 26 U.S.C. § 7422(a) prevents a taxpayer from filing suit to claim a refund without having earlier submitted a "duly filed" refund claim to the IRS, and the 2017 amended returns were for the above reason not "duly filed," the Claims Court dismissed the case in February 2020. *See Dixon v. United States*, 147 Fed. Cl. 469, 472–75 (2020) (*Dixon I*).

Within days of that dismissal, Mr. Dixon filed with the IRS duly signed amended returns for the 2013 and 2014 tax years, though the time allowed for amended returns claiming a refund for 2013 and 2014 had long passed. He shortly proceeded to file a timely appeal of the dismissal to this court, but after briefing, he voluntarily dropped the appeal in September 2020. Then, only days later, he filed a second action in the Claims Court based on the IRS's failure to act on his duly signed 2020 amended returns. The Claims Court again dismissed Mr. Dixon's case, concluding that the 2020 amended returns were untimely and that the "informal claim" doctrine was inapplicable here to allow

the untimely (but proper) 2020 filings to relate back in time to the timely (but defective) 2017 filings. *See Dixon v. United States*, 158 Fed. Cl. 69, 75–78, 80 (2022) (*Dixon II*).

Mr. Dixon appeals. For the reasons that follow, which are different from the reasons set forth by the Claims Court, we affirm.

## I

### A

If a taxpayer has filed a return as required by 26 U.S.C. § 6011(a) and paid taxes based on the return, and it later turns out that the amount paid was more than owed, then, as a "[g]eneral rule[,]" the IRS—more precisely, the Secretary of the Treasury—"within the applicable period of limitations, may credit the amount of such overpayment" against other tax liabilities of the taxpayer "and shall, subject to [certain limitations], refund any balance to such person." 26 U.S.C. § 6402(a).[1] The "period of limitations" for securing a credit or refund is keyed to the previous tax return or payment: A "[c]laim for credit or refund . . . shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later." *Id.* § 6511(a). Generally, failure to timely file a refund claim forecloses recovery. *See id.* § 6511(b)(1) ("No credit or refund shall be allowed or made after the expiration of the period of limitation . . . for the filing of a claim for credit or refund, unless a claim for credit or refund is filed by the taxpayer within such period."); *id.* § 6514(a)(1)–(2) ("A refund . . . shall be considered erroneous . . . [i]f made after the expiration of the period of limitation for filing claim therefor, unless within such period claim was filed[,] or . . . [i]n the case of a claim filed within the proper time and disallowed by the

---

[1] We hereafter refer interchangeably to the Secretary, the Commissioner of Internal Revenue, and the IRS.

Secretary, if the credit or refund was made after the expiration of the period of limitation for filing suit, unless within such period suit was begun by the taxpayer."). A taxpayer and the IRS may agree, however, to extend the time in which the IRS may assess taxes and in which the taxpayer may file a refund claim. *See id.* §§ 6501(c)(4)(A), 6511(c)(1).

Just as there are timing requirements for filing refund claims with the IRS, there are both timing and other requirements for filing refund claims in court. "Under 26 U.S.C. § 6532 and § 7422(a), a suit may be brought in [a] . . . [c]ourt after an administrative claim has been filed and either the taxpayer waited six months before filing suit or the IRS took final action on the claim." *Brown v. United States*, 22 F.4th 1008, 1010 (Fed. Cir. 2022). A refund action may be brought "either in United States district court or in the [Claims Court]." *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 4 (2008) (citing 28 U.S.C. § 1346(a)(1); *EC Term of Years Trust v. United States*, 550 U.S. 429, 431 & n.2 (2007)).

Section 6532(a) states two rules for the timing of the action in court. First, no such suit "shall be begun before the expiration of 6 months from the date of filing the claim required under such section unless the Secretary renders a decision thereon within that time." 26 U.S.C. § 6532(a)(1). Second, "nor [shall such suit be begun] after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates." *Id.* The latter limit may be extended by written agreement with the Secretary. *Id.* § 6532(a)(2).

Timeliness is not the only requirement for a judicial action for a refund. "No suit or proceeding shall be maintained in any court for the recovery of" a tax refund "until a claim for refund . . . has been duly filed with the

Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof." *Id.* § 7422(a). Two statutes are noteworthy here for determining whether claims were "duly filed." Section 6061(a) says: "Except as otherwise provided . . . , any return, statement, or other document required to be made under any provision of the internal revenue laws or regulations shall be signed in accordance with forms or regulations prescribed by the Secretary." Section 6065 says: "Except as otherwise provided by the Secretary, any return, declaration, statement, or other document required to be made under any provision of the internal revenue laws or regulations shall contain or be verified by a written declaration that it is made under the penalties of perjury."

In *Brown*, we explained the effect of those provisions in light of existing regulations. We stated: "Sections 6061(a) and 6065 thus impose a default rule that individual taxpayers must personally sign and verify their income tax refund claims." *Brown*, 22 F.4th at 1012. "To be sure," we added, "§ 6061(a) gives the Secretary the authority to prescribe how individual taxpayers may satisfy the statute's requirement," and "[s]imilarly, § 6065 gives the Secretary discretion to suspend the verification requirement in certain cases." *Id.* at 1013. But those statutes' "implementing regulations echo the statutory default rule. They presumptively require individual taxpayers to execute their own refund claims and returns. And, by regulation, the person who signs a return or other document must also verify it." *Id.* (citing 26 C.F.R. §§ 1.6012-1(a)(5), 1.6065-1(a), 301.6402(e)). As a result:

> [A] taxpayer must satisfy the statutory default rule or else comply strictly with the implementing regulations. If they do neither, the document is effectively unsigned and unverified under §§ 6061(a) and 6065 and the taxpayer has not "duly filed" the refund claim.

*Id.*[2] Based on that analysis, the court in *Brown* ruled that "[b]ecause the taxpayer signature and verification requirements derive from statute, the IRS cannot waive those requirements" under the waiver doctrine of *Angelus Milling Co. v. Commissioner*, 325 U.S. 293, 296 (1945). *Brown*, 22 F.4th at 1013. "In the alternative," the court then held, the taxpayer did not meet the requirements of the waiver doctrine in any event. *Id.*

Finally, determining whether a judicial action is proper also requires looking at the taxpayer's compliance with the timing requirements that govern the administrative claim,

---

[2] The court in *Brown* had earlier quoted another regulatory provision, 26 C.F.R. § 301.6402-2(b)(1)—not cited in the just-summarized reasoning—as stating the verification requirement for a claim to be "duly filed." *Brown*, 22 F.4th at 1012. That provision reads (with the emphasis given in *Brown* when it quoted the provision):

> No refund or credit will be allowed after the expiration of the statutory period of limitation applicable to the filing of a claim therefor except upon one or more of the grounds set forth in a claim filed before the expiration of such period. The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof. The statement of the grounds and facts *must be verified by a written declaration that it is made under the penalties of perjury.* A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit.

26 C.F.R. § 301.6402-2(b)(1). The court in *Brown* did not highlight or rely on the last ("considered for any purpose") sentence.

*i.e.*, the filing made to the IRS—requirements that, as noted, for refund claims like those at issue here, generally demand filing within three years of when the earlier return was filed or two years of when the tax was paid. *See Computervision Corp. v. United States*, 445 F.3d 1355, 1362–63 (Fed. Cir. 2006) (citing 26 U.S.C. § 6511(a)). The Supreme Court has ruled that failure to file with the IRS within the prescribed time deprives the court of "jurisdiction over [the] suit for refund." *United States v. Dalm*, 494 U.S. 596, 608–10 (1990). This court in *Brown* ruled that *Dalm*'s jurisdictional characterization applies to "the fact of filing" in the time allowed, but not to § 7422(a)'s "duly filed" requirements governing "the adequacy of the filing" if timely made, and held the latter not to be jurisdictional in nature. *Brown*, 22 F.4th at 1011–12.[3]

_____

[3]    The Court in *Dalm* based its jurisdictional characterization on the notion that a proper "understanding of sovereign immunity" prevents courts from "go[ing] beyond the authority Congress has given [them] in permitting suits against the Government." 494 U.S. at 610; *see id.* at 608–10. Recently, the Supreme Court wrote that the "general proposition . . . that a condition to the waiver of sovereign immunity . . . must be strictly construed[] . . . d[oes] not mean that time limits accompanying such waivers are necessarily jurisdictional." *Wilkins v. United States*, 143 S. Ct. 870, 879 (2023) (second ellipsis in original) (internal quotation marks and citations omitted). We need not address the effect of *Wilkins* on the jurisdictional characterization adopted by the Supreme Court in *Dalm*. That characterization is immaterial here, as Mr. Dixon has not raised any issue about equitable or comparable bases for excusing noncompliance that are unavailable for jurisdictional rules (but may be available for "nonjurisdictional claims-processing rule[s]," *Wilkins*, 143 S. Ct. at 881; *see Hamer v. Neighborhood Housing Services of Chicago*, 138

B

As we have recognized, "[t]he Supreme Court has held that in some circumstances a taxpayer's claim" may or even must be addressed by the IRS or heard in court "even though the taxpayer did not timely file the formal, detailed claim required by the regulations." *Computervision*, 445 F.3d at 1363 (citations omitted). We have categorized the different circumstances and noted that the relevant "aggregation of rules" has been referred to "as the substantial variance doctrine," which "permits consideration of a claim for refund despite failure to timely file detailed formal claims with the IRS when a substantial variance from the requirements of the regulation is not involved." *Id.* at 1363–64 (citations and footnote omitted). "[T]his doctrine applies only in four limited situations," and over time, each has "come to be identified as a separate doctrine." *Id*. at 1364.

One is the informal-claim doctrine, which is the only doctrine at issue in the present matter; the waiver doctrine of *Angelus Milling*, which was at issue in *Brown*, is not at issue here. Under the informal-claim doctrine, courts treat "a timely claim with purely formal defects [as] permissible if it fairly apprises the IRS of the basis for the claim within the limitations period" and is followed by "an untimely amendment that complied with the regulations." *Id.*; *see United States v. Kales*, 314 U.S. 186, 193–97 (1941). Where the doctrine applies, an untimely formal claim is allowed to relate back, for timeliness purposes, to a timely informal claim. *See Kales*, 314 U.S. at 190–97, relying on *United States v. Memphis Cotton Oil Co.*, 288 U.S. 62, 67–72 (1933) (discussing "analogies suggested by pleadings in a lawsuit," and specifically, "[t]he general rule . . . that an amendment of a pleading will take effect by relation" back,

---

S. Ct. 13, 18 n.3 (2017)), and the Claims Court dismissed in the alternative for failure to state a claim, *see Dixon II*, 158 Fed. Cl. at 71, 75, 80.

and concluding that untimely formal claims can amend timely informal ones).

Importantly for the present case, the Supreme Court made clear in *Memphis Cotton* that, just as a plaintiff may not amend a defective complaint after the complaint has been dismissed, a taxpayer cannot "perfect" or "amend" a timely informal claim that is no longer before the IRS. *See Memphis Cotton*, 288 U.S. at 71–72 ("The Commissioner has the remedy in his own hands if the claim as presented is so indefinite as to cause embarrassment to him or to others in his Bureau. He may disallow the claim promptly for a departure from the rule. If, however, he holds it without action until the form has been corrected, and still more clearly if he hears it, and hears it on the merits, what is before him is not a double claim, but a claim single and indivisible, the new indissolubly welded into the structure of the old. . . . An argument is made that at the time of this amendment the claim had been finally rejected and the proceeding thereby ended. If so, it was too late. When correction is thus postponed, there is no longer anything to amend, any more than in a lawsuit after the complaint has been dismissed." (citations omitted)). This court explained the point in discussing one of the other doctrines in the substantial-variance family, stating that "to prevent surprise and to [permit] . . . an administrative investigation and determination," a "formal amendment, if filed after the expiration of the limitations period, must be filed while the original claim is still being considered by the IRS." *Computervision*, 445 F.3d at 1371 (alterations in original) (internal quotation marks and citation omitted).

An amendment, *i.e.*, a formal claim correcting defects in an earlier claim, may be untimely, and so flunk the requirement of "still being considered by the IRS," in two ways. *Id.* First, there can be no amendment once the IRS has allowed or disallowed the refund claim. *Id.* at 1371–72; *see Memphis Cotton*, 288 U.S. at 72. Second, we have held that a taxpayer may not amend a refund claim after

filing a suit for refund, because that act causes authority over the refund claim to transfer from the IRS to the Department of Justice, such that "[t]he IRS no longer has the authority to resolve the claim" or the "power to 'allow' or 'disallow' it." *Computervision*, 445 F.3d at 1372 (citing Exec. Order No. 6166, § 5 (June 10, 1933), *reprinted in* 5 U.S.C. § 901 (2000)); *see id.* at 1372 n.18 (quoting Exec. Order No. 6166, § 5: "As to any case referred to the Department of Justice for prosecution or defense in the courts, the function of decision whether and in what manner to prosecute, or to defend, or to compromise, or to appeal, or to abandon prosecution or defense, now exercised by any agency or officer, is transferred to the Department of Justice."). In either case, the "IRS's jurisdiction" is "terminate[d]," and the "amendment is ineffective." *Id.* at 1371–72.

## II

### A

Mr. Dixon is an Australian national and U.S. taxpayer who, at the pertinent times, served as the managing member and CEO of Dixon Advisory, USA, a subsidiary of Dixon Advisory Group Pty Ltd. J.A. 134–35. After filing Form 1040 U.S. Income Tax Returns for tax years 2013 and 2014 (in October 2014 and October 2015, respectively), J.A. 134, Mr. Dixon learned in 2016 that he might receive more favorable tax treatment were he to elect to classify Dixon Advisory Group as a partnership rather than a corporation, J.A. 135. He attempted to effect that change by filing a Form SS-4 to request an Employer Identification Number from the IRS for Dixon Advisory Group, J.A. 135, but he never subsequently filed a Form 8832, which is necessary to change an entity's classification, *see Dixon II*, 158 Fed. Cl. at 78–79 (citing 26 C.F.R. § 301.7701-3(c)).

In April 2017, Mr. Dixon sought to amend his previous tax returns to reflect the new, more favorable tax treatment that he believed he was eligible for due to the

putative reclassification.  J.A. 135–36; J.A. 149–51; J.A. 153–55.  Specifically, in that month, his tax preparer, Mr. Castro, filed Forms 1040X for tax years 2013 and 2014, requesting refunds of $137,656 and $1,588,653, respectively, based on foreign tax credits and an adjustment to Mr. Dixon's net investment income tax.[4] J.A. 135–36; J.A. 149–51; J.A. 153–55.  The forms, however, did not contain Mr. Dixon's original signature; in each form, on the line for the taxpayer's signature, there appeared an illegible signature written (as would later emerge) by Mr. Castro.  J.A. 136; *see Dixon I*, 147 Fed. Cl. at 472–73.  Mr. Dixon also did not submit "an effective power of attorney" for Mr. Castro. *Dixon I*, 147 Fed. Cl. at 472.  For simplicity, except where otherwise needed, we describe the deficiency here as a failure to meet at least the signature requirement (discussed in *Brown*).[5]

In May 2018, the IRS began auditing Mr. Dixon's 2017 filings, starting with the 2014 Form 1040X and later including the 2013 Form 1040X.  J.A. 136.  Mr. Dixon participated in the audit through Mr. Castro.  *Id.*  The IRS ultimately denied the claimed refund and, in fact, assessed an additional tax based on his reported business income. *See id.*; *Dixon II*, 158 Fed. Cl. at 72.

--------

[4]  For the tax on net investment income, Mr. Dixon asserted that he overpaid by—and was entitled to refunds of—$84,418 and $251,866, respectively.  *See* J.A. 149 (line 9, box B); J.A. 153 (line 10, box B); *see also* J.A. 259–60 (motion for judgment on pleadings); J.A. 364 (reply brief).

[5]  No greater specificity is needed given the limited basis for our decision in this appeal.  Our simplification should not be taken to limit arguments for the significance of distinctions among signature, verification, power-of-attorney, or other requirements in other cases.

## B

In February 2019, Mr. Dixon challenged the denial of the refund, as well as the assessment of the additional tax, at the Claims Court. *Dixon I*, 147 Fed. Cl. at 473; *Dixon II*, 158 Fed. Cl. at 72. Upon determining that Mr. Dixon's forms failed to meet at least the signature requirement and therefore were not "duly filed" with the IRS as required by § 7422(a) as a precondition to judicial consideration of the refund claim, the Claims Court, on February 21, 2020, dismissed the case. *See Dixon I*, 147 Fed. Cl. at 473–75.

On February 25, 2020, Mr. Dixon resubmitted his two Forms 1040X to the IRS—this time with his signature but otherwise identical to the previous forms. J.A. 136; J.A. 157–59; J.A. 204–06; *see Dixon II*, 158 Fed. Cl. at 72. In March 2020, he then noticed an appeal of the dismissal to this court, and that appeal proceeded until, based on Mr. Dixon's unopposed request, it was dismissed under Federal Rule of Appellate Procedure 42(b) on September 21, 2020. Three days later, on September 24, 2020, Mr. Dixon again sued in the Claims Court, this time based on the IRS's failure to act on his signed 2020 Forms 1040X. J.A. 15; J.A. 136–37.

In July 2021, the government moved for judgment on the pleadings. J.A. 16; J.A. 252–79. The government argued that Mr. Dixon could not pursue his net investment income tax claim. *See* J.A. 267–70 (opening brief in support of motion); J.A. 362–63 (reply brief). In particular, the government noted, as is undisputed, that Mr. Dixon filed his signed 2020 Forms 1040X concerning the 2013 and 2014 tax years long after the time allowed (three years from the 2014 and 2015 filing of the original returns, *see* J.A. 134–36; J.A. 141–42; J.A. 144–45, and two years from payment, which must have occurred—although the record is unclear—no later than April 2017, when Mr. Dixon filed Forms 1040X seeking refunds of portions of that payment, *see* J.A. 135–36; J.A. 149–51; J.A. 153–55). J.A. 268–69. It

then argued that the informal-claim doctrine could not be invoked to treat his signed 2020 Forms 1040X as if they were filed at the time of his unsigned 2017 Forms 1040X, J.A. 269; J.A. 362–63, because 26 C.F.R. § 301.6402-2(b)(1) says that "[a] claim which does not comply with this paragraph," including that it be "verified by a written declaration that it is made under the penalties of perjury[,] . . . will not be considered for any purpose as a claim for refund or credit," *see supra* n.2 (emphasis omitted) (quoting provision). (The government added that Mr. Dixon was precluded from asserting the invalidity or inapplicability of § 301.6402-2—an issue not raised on appeal. J.A. 269; J.A. 363, 370–77.)

The Claims Court granted the government's motion and dismissed Mr. Dixon's net investment income tax claim for lack of jurisdiction or, alternatively, failure to state a claim. *Dixon II*, 158 Fed. Cl. at 71, 75, 80. The court agreed with the government that § 301.6402-2(b)(1)'s "for any purpose" language forbids the application of the informal-claim doctrine to Mr. Dixon's unsigned Forms 1040X. *Id.* at 75. The court looked back to the Supreme Court's informal-claim-doctrine *Kales* decision and reasoned that the Court in *Kales* "emphasiz[ed] that valid informal claims are *only* those that '[have] not misled the [IRS] and [have been] *accepted and treated*' by the IRS as valid claims." *Id.* at 76 (emphases and second, third, and fourth alterations added by Claims Court) (quoting 314 U.S. at 194). The Claims Court also reasoned that § 301.6402-2(b)(1)'s language meant that tax returns that fail to meet at least the signature requirement "can never be accepted and treated as valid claims by the IRS and, as such, they cannot constitute informal claims under *Kales*." *Id.* Turning from the regulation, the court briefly stated that the IRS "cannot waive" the signature requirement, because that requirement is statutory. *See id.* at 76 & n.3 (citing the principal Supreme Court waiver-doctrine decision, *Angelus Milling*, 325 U.S. at 296, and 26 U.S.C. §§ 6061(a),

6065).  On that basis, the Claims Court concluded that "un-signed tax returns present a more serious deficiency than garden-variety technical deficiencies that are normally protected under the informal claim doctrine."  *Id.* at 76.

The Claims Court further concluded that "[t]here is reason to believe that Section 7422(a) should be deemed ju-risdictional," *id.* at 77, and that in any event, Mr. Dixon could not establish any equitable exceptions (*e.g.*, waiver by the IRS) to excuse his failure to duly file a refund claim, *id.* at 77–78.  The court thus granted the government's mo-tion for judgment and dismissed Mr. Dixon's suit.  *Id.* at 80.  The same day, the Claims Court denied Mr. Dixon's motion for leave to amend for futility.  *See Dixon v. United States*, 158 Fed. Cl. 80, 82–86 (2022) (*Dixon III*).

The Claims Court entered judgment on January 19, 2022, and Mr. Dixon timely appealed.  We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## III

We decide the correctness of the Claims Court's legal determinations de novo, and we review its factual findings for clear error.  *See Palladian Partners, Inc. v. United States*, 783 F.3d 1243, 1252 (Fed. Cir. 2015).  Where juris-diction was not determined based on resolution of factual disputes, we decide de novo the correctness of a dismissal for lack of jurisdiction or failure to state a claim.  *See Golden v. United States*, 955 F.3d 981, 986 (Fed. Cir. 2020); *Shoshone Indian Tribe of Wind River Reservation v. United States*, 672 F.3d 1021, 1029–30 (Fed. Cir. 2012).

## A

The Claims Court held that the informal-claim doctrine does not apply here.  To the extent the Claims Court relied on its view of *Kales* and on the sentence of 26 C.F.R. § 301.6402-2(b)(1) stating that "[a] claim which does not comply with this paragraph," including its verification re-quirement, "will not be considered for any purpose as a

claim for refund or credit," we reject the Claims Court's reasoning.

The Claims Court misread *Kales* as stating "that valid informal claims are *only* those that '[have] not misled the [IRS] and [have been] *accepted and treated*' by the IRS as valid claims." *Dixon II*, 158 Fed. Cl. at 76 (emphases and other alterations added by Claims Court) (citation omitted). The Supreme Court did not so limit the doctrine. Rather, the Court wrote that it

> ha[d] often held that a notice fairly advising the Commissioner of the nature of the taxpayer's claim, which the Commissioner could reject because too general or because it does not comply with formal requirements of the statute and regulations, will nevertheless be treated as a claim where formal defects and lack of specificity have been remedied by amendment filed after the lapse of the statutory period.

*Kales*, 314 U.S. at 194 (citing, *e.g.*, *Memphis Cotton*, 288 U.S. at 62). It then said: "This is especially the case where such a claim has not misled the Commissioner and he has accepted and treated it as such." *Id.* (citing, *e.g.*, *Memphis Cotton*, 288 U.S. at 70, and *Bonwit Teller & Co. v. United States*, 283 U.S. 258 (1931)). "Especially" is not "only."

The Claims Court also attributed far too much to the regulatory sentence. For one thing, the Court in *Kales* held the informal-claim doctrine to be applicable even though, at the time, a regulation was in place containing language materially identical to that of § 301.6402-2(b)(1). *See* 26 C.F.R. § 3.322-3 (1938) ("Claims for refund by taxpayers . . . must set forth in detail and *under oath* each ground upon which a refund is claimed, and facts sufficient to apprise the Commissioner of the exact basis thereof. No refund or credit will be allowed after the expiration of the statutory period of limitation applicable to the filing of a claim therefor except upon one or more of the grounds set

DIXON v. US

forth in a claim filed prior to the expiration of such period. A claim which does not comply with this paragraph will not be considered *for any purpose* as a claim for refund." (emphases added)).[6] The principle of *Kales*, amounting to requiring allowance of relation-back amendment for fairness reasons in specified circumstances, applies readily to a regulatory provision such as this one. *See Kales*, 314 U.S. at 194 ("This Court, applying the statute and regulations, has often held that a notice fairly advising the Commissioner of the nature of the taxpayer's claim, which the Commissioner could reject because too general or because it does not comply with formal requirements of the statute and

---

[6] At the time the "letter of protest" at issue in *Kales* was provided to the Commissioner, 314 U.S. at 190–91, the regulatory requirements for refund claims do not appear to have been meaningfully different in relevant respects from the present requirements, *see*, *e.g.*, I.T. 2228, 4-2 C.B. 104, 104 (1925) ("Claims for refund, unless sworn to before a collector or deputy collector, are required to be executed before an officer authorized to administer oaths for general purposes by the laws of the United States or of any State . . . ."); L.O. 1116, 3-1 C.B. 350, 358 (1924) ("[I]t is evident that the Treasury Department contemplated the presentation, in good faith, of refund claims on a form designed for the purpose, or at least in a manner substantially as outlined on the printed form, and that the reasons or grounds for refund would be set forth frankly and 'completely,' under oath, so that, as so submitted, the Commissioner would have before him *all* the grounds on which claimant relied . . . . As the regulations prescribed that *all* the facts relied upon in support of the claim be clearly set forth under oath and the form of claim-affidavit required the claimant to take oath that the claim made is 'complete' in substance, a claim so submitted must be treated as a complete claim, provided the other provisions of the regulations have been followed in the preparation and presentation thereof.").

regulations, will nevertheless be treated as a claim where formal defects and lack of specificity have been remedied by amendment filed after the lapse of the statutory period." (citations omitted)); *Computervision*, 445 F.3d at 1364 ("First, formal compliance with the statute and regulations is excused when the informal claim doctrine is applicable.").

Several circuit courts, as well as the IRS, have stated that the regulation does not foreclose application of the informal-claim doctrine. *See generally Commissioner v. Ewing*, 439 F.3d 1009, 1015 (9th Cir. 2006), *superseded on other grounds*, Tax Relief and Health Care Act of 2006, Pub. L. No. 109-432, div. C, § 408, 120 Stat. 2922, 3061–62, *as recognized in Wilson v. Commissioner*, 705 F.3d 980, 984 (9th Cir. 2013); *Kaffenberger v. United States*, 314 F.3d 944, 954 (8th Cir. 2003); *BCS Financial Corp. v. United States*, 118 F.3d 522, 524 (7th Cir. 1997); Claims for Credit or Refund, 80 Fed. Reg. 43,949, 43,950 (July 24, 2015). And the Claims Court's view, which would categorically limit the informal-claim doctrine to claims that are accompanied by a written declaration made under penalty of perjury, is inconsistent with a substantial body of case law, including from this court and its relevant predecessor, recognizing that the doctrine can apply, under proper circumstances, even in the absence of: (1) any writing by the taxpayer, *see Western Co. of North America v. United States*, 323 F.3d 1024, 1034–35 (Fed. Cir. 2003); (2) any writing signed by the taxpayer, *see, e.g., BCS Financial*, 118 F.3d at 524; *United States v. Commercial National Bank of Peoria*, 874 F.2d 1165, 1171–73 (7th Cir. 1989); *Johnson v. United States*, 562 F. Supp. 3d 1026, 1029–32 (E.D. Cal. 2021), *amended on reconsideration*, 2022 WL 1524602, at *3 (E.D. Cal. May 13, 2022); *Hrcka v. Crenshaw*, 140 F. Supp. 350, 352–53 (E.D. Va. 1956); or (3) any writing signed by the taxpayer under penalty of perjury, *see, e.g., Kales*, 314 U.S. at 190–97; *Newton v. United States*, 163 F. Supp. 614, 616, 618–20 (Ct. Cl. 1958); *Night Hawk Leasing Co. v. United*

*States*, 18 F. Supp. 938, 939–42 (Ct. Cl. 1937); *New England Electric System v. United States*, 32 Fed. Cl. 636, 638–39, 644–46 (1995); U.S. Br. at 27 ("[T]he informal claim very likely was signed by the taxpayer and quite possibly under penalty of perjury" in *Kales*, while the checks in *Night Hawk* "presumably were signed.").

We therefore reject the major underpinnings of the Claims Court's ruling.

## B

In this court, the government's principal defense of the Claims Court's dismissal expands on a distinct, briefly stated rationale of the Claims Court. *See Dixon II*, 158 Fed. Cl. at 76 & n.3. Specifically, it argues that at least the signature requirement (not met by Mr. Dixon's unsigned 2017 Forms 1040X) is statutory and that the informal-claim doctrine applies only when the sole defects of the informal claim are ones of regulatory compliance, not statutory compliance. U.S. Br. at 19–29. The government relies on *Brown*—decided two weeks before the Claims Court decision, but apparently not brought to that court's attention—to contend that, if statutory noncompliance (specifically with the signature and verification requirements) cannot be *waived* by the voluntary action of the IRS, as *Brown* concludes, 22 F.4th at 1012–13, neither should statutory noncompliance of a timely claim be curable by relation back of an untimely compliant claim.

We do not accept or reject this contention. We need not do so in light of an alternative basis of affirmance, set forth *infra*. We choose that alternative basis of decision in part because the present government contention presents several substantial issues that would benefit from further exploration, in another case, where necessary for decision.

The government's argument, at least on its face, is in tension with decisions of both the Supreme Court and this court. *See Kales*, 314 U.S. at 194 ("This Court, applying the

statute and regulations, has often held that a notice fairly advising the Commissioner of the nature of the taxpayer's claim, which the Commissioner could reject because too general or because it does not comply with formal requirements of the statute and regulations, will nevertheless be treated as a claim where formal defects and lack of specificity have been remedied by amendment filed after the lapse of the statutory period." (citations omitted)); *Computervision*, 445 F.3d at 1364 ("First, formal compliance with the statute and regulations is excused when the informal claim doctrine is applicable."). And it is in tension with the above-described case law, *see supra* pp. 15–18, which has applied the informal-claim doctrine in the absence of writings, signatures, and verification under penalty of perjury.

This court's decision in *Brown* does not itself stand for the proposition that the informal-claim doctrine is confined to regulatorily noncompliant claims. *Brown* dealt solely with a separate component of the substantial-variance doctrine—specifically, *Angelus Milling* waiver—and thus did not rule on or even address the informal-claim doctrine. 22 F.4th at 1012–13. The government's contention would require full consideration of the difference between a principle that simply forbids the IRS to depart in individual cases from binding statutory requirements (as implemented through formally adopted regulations lacking case-specific waiver authority) and a principle that interprets the statute and regulations as generally allowing for relation-back cures in specified circumstances. Insofar as the Supreme Court, in interpreting the various provisions of Title 26, has determined that the term "claim" may encompass a timely yet technically deficient filing that is perfected by a technically compliant yet untimely filing, *see Kales*, 314 U.S. at 190–97; *Memphis Cotton*, 288 U.S. at 67–72, then application of the informal-claim doctrine in these limited circumstances would not entail waiving violations of "statutory commands," *Brown*, 22 F.4th at 1012.

Nevertheless, with respect to at least the signature requirement at issue here, the court in *Brown* concluded that the waiver doctrine was inapplicable generally (and, in the alternative, on the particular facts of the case) because it was based on a statute combined with implementing regulations that were not subject to case-specific IRS waiver authority. 22 F.4th at 1012–13. Less work than necessary has been done in the present case to show whether, for the specific requirement at issue, any conclusion of applicability of the informal-claim doctrine could fit with *Brown*'s conclusion of inapplicability of the waiver doctrine. It is the courts' duty "'to make sense rather than nonsense out of the *corpus juris*.'" *Maslenjak v. United States*, 137 S. Ct. 1918, 1926 (2017) (quoting *West Virginia University Hospitals, Inc. v. Casey*, 499 U.S. 83, 101 (1991)).

We flag these issues without prejudging the result of a full consideration of these and other issues in a case where deciding the question is necessary to the outcome.

## C

We affirm the Claims Court's decision on a separate ground advanced by the government. Mr. Dixon's "amendment[s]," *i.e.*, his signed 2020 Forms 1040X, were "too late" when filed, *Memphis Cotton*, 288 U.S. at 72, because of his initial Claims Court action.

## 1

We address this ground even though it was not meaningfully presented by the government before the Claims Court. *See* J.A. 267–70 (opening brief); J.A. 362–63 (reply brief). In general, this court "has the discretion" to excuse forfeiture and "to accept new arguments presented for the first time on appeal." *Taha v. United States*, 28 F.4th 233, 239 (Fed. Cir. 2022). After the government presented this alternative ground for affirmance in its brief as appellee in this court, Mr. Dixon, in his reply brief, did not object to the consideration of this ground on its merits. The issue is

purely legal as presented by the parties before us, there being no suggestion of a need for determinations of disputed facts to resolve it. *See Icon Health & Fitness, Inc. v. Strava, Inc.*, 849 F.3d 1034, 1040 (Fed. Cir. 2017). The issue involves an aspect of the informal-claim doctrine itself, an aspect that is part and parcel of the core notion of relation-back amendment that is before us. And we see no difficulty in resolving it here and now.

2

On the merits, the Supreme Court in *Memphis Cotton*, in articulating the informal-claim doctrine, stressed the importance of any amendment to a deficient refund claim being filed while the original claim remains before the IRS. 288 U.S. at 72. Only when the IRS "holds [a deficient claim] without action until the form has been corrected" is it true that "what is before [the IRS] is not a double claim, but a claim single and indivisible, the new indissolubly welded into the structure of the old." *Id.* at 71. But "[w]hen correction is . . . postponed, there is no longer anything to amend, any more than in a lawsuit after the complaint has been dismissed." *Id.* at 72. This court reiterated that principle in *Computervision*, where we noted that the IRS loses jurisdiction over—and a taxpayer loses the ability to amend—any refund claim that is allowed, disallowed, or the subject of a suit for refund. 445 F.3d at 1371–73.

Mr. Dixon has not disputed the premise that, under the Executive Order relied on in *Computervision*, the IRS loses authority to act on an amendment of an unperfected claim once suit is filed. That loss of authority occurred here. Mr. Dixon's sole argument against applying the "too late" principle in this case is that the principle is limited to the germaneness doctrine and is inapplicable to the informal-claim doctrine. Dixon Reply Br. at 17–18. We reject that argument.

Although this court in *Computervision* was discussing termination of the IRS's jurisdiction in the context of "the

germaneness doctrine," which is another component of the substantial-variance doctrine, 445 F.3d at 1364, 1369–73, we see no basis to disregard that principle when applying the informal-claim doctrine.  The principle originated in an informal-claim-doctrine case.  *See Memphis Cotton*, 288 U.S. at 64 ("The central question in the controversy can be stated in a sentence: May a claim for a tax refund which has been seasonably filed, but which fails to state the grounds upon which the refund is demanded, be amended by specifying the grounds at any time before the claim in its original form has been finally rejected, though it be after the time when a wholly new claim would be barred by limitation?").  And the principle fits the rationale of "[t]he informal claim doctrine," which "is predicated on the expectation that any formal deficiency will at some point be corrected" to give the IRS "a full opportunity to address the problem administratively." *Greene-Thapedi v. United States*, 549 F.3d 530, 533 (7th Cir. 2008); *see Computervision*, 445 F.3d at 1371.

Mr. Dixon suggests that the Supreme Court in *Kales* applied the informal-claim doctrine even though the taxpayer filed her corrected form after filing a refund suit.  But that suggestion is incorrect, as it fails to distinguish two different claims that were at issue in *Kales*.

Ms. Kales's 1925 "letter of protest" challenged: (1) the amount owed under the Commissioner's 1925 "jeopardy deficiency assessment," which was based on Ms. Kales purportedly overstating the price she had paid in 1913 for certain stock she had sold in 1919; and (2) the "excessive" tax she paid in her 1919 return because the Commissioner had in fact underestimated the stock's 1913 value. *Kales*, 314 U.S. at 190–91.  Ms. Kales brought a suit limited to the first matter, based on a refund claim specifically for "the amount of the jeopardy assessment," and she prevailed on that refund suit in 1928.  *Id.* at 191.  Then she pursued the second matter, which was not part of the earlier suit: She "filed a formal claim for refund of the taxes paid in 1919"

as "an amendment of the claim for refund contained in her [1925] letter of protest." *Id.* Only after the Commissioner's 1935 rejection of her second refund claim—on the basis that this claim "was merged into the [1928] judgment" on the earlier claim—did she file suit on the second refund claim. *Id.* at 192 (internal quotation marks omitted). For each of her challenges, therefore, Ms. Kales filed suit only after filing a formal claim, the second of which the Court held was a valid amendment to a timely informal claim. *Id.* at 192–97. *Kales* therefore did not address—and cannot be read as permitting—amendment of an informal claim after the taxpayer has already sued.[7]

With no other arguments presented against application of the "too late" principle here based on the filing of the Claims Court action before the filing of the corrected refund claims, we conclude that the principle bars Mr. Dixon's present action.

### 3

In short, Mr. Dixon's first action in the Claims Court was properly dismissed because the claims, though timely filed, were not "duly filed" under § 7422(a). By the time Mr. Dixon filed corrected claims with the IRS to cure the identified defects, the time limits for filing with the IRS had passed, unless the corrected claims related back to the earlier claims under the informal-claim doctrine. For the reasons we have given, however, we conclude that the doctrine does not apply here. It follows that the Claims Court properly dismissed the present refund action.

---

[7] Mr. Dixon also directs us to cases that never addressed the efficacy of any potential post-suit, post-dismissal amendment. *See* Dixon Reply Br. at 18 (citing *Greene-Thapedi*, 549 F.3d at 532); *accord Johnson*, 2022 WL 1524602, at *3. Such cases offer no help to Mr. Dixon.

　　　　　　　　　　　　　　　　　　DIXON v. US

## IV

For the foregoing reasons, we affirm the decision of the Claims Court.

The parties shall bear their own costs.

**AFFIRMED**